We were persuaded that the reasoning employed by us in obtaining the conclusion reached in our original opinion,37 So.2d 726, may have been fallacious and, therefore, we granted a rehearing.
Plaintiff maintains that the issues which we must determine on rehearing are as follows:
1. "Whether any of the articles have been sold at auction by Fabacher?
2. "Whether there was any agreement between plaintiff and Fabacher as to a minimum price for which any of the articles should be sold at auction?
3. "Whether the court should not decree that all of the articles which have not been sold must be returned to plaintiff by defendant within five days; and that if defendants fail to comply with that decree, there be judgment against defendants and in favor of plaintiff for the value of the articles?"
We are of the opinion that our original decree answered the first two questions posed by the plaintiff.
Relative to the third question propounded, plaintiff contends that "this aspect of the case is governed by a direct precedent in the decision of this court in the case of Steckler v. Spicuzza, La. App., 132 So. 382."
We are unable to agree that "this aspect of the case is governed" by the case cited above. A casual reading of that case indicates that it is obviously distinguished from this case on the "facts".
In the Steckler case, plaintiff sued the defendant auctioneer for the value of three specific articles, to-wit:
"One antique Japanese dresser, $200. One oil painting 'Old Salt,' $100. One shadow picture, $50."
Defendant conceded his liability at least to the extent of $20.00 for the two pictures. As to the antique Japanese dresser defendant claimed that he was unable to effect a sale because of the limit placed thereon by plaintiff, and that he, therefore, placed it in a public warehouse "where it stillremains." (Italics ours.)
In the Steckler case we said:
"It is true that the evidence shows conclusively that for a long time plaintiff endeavored to obtain from Spicuzza (auctioneer) either the return of the dresser or information as to where it could be located, and that he was unsuccessful in these attempts." *Page 373 
In conformity with this evidence we rendered judgment in plaintiff's favor ordering the return of the dresser within five days or alternatively that plaintiff be given the value of the dresser — $200.00.
It is apparent that these "facts" distinguish this case from the one now under consideration, as we shall prove. In the present case plaintiff's petition itemized the articles upon which the suit was based, and during the course of the trial plaintiff offered in evidence another itemized list of the articles delivered to the defendant auctioneer by plaintiff's wife, which did not agree with plaintiff's own list contained in the petition — nor did either of the itemized lists of the articles in question agree with the defendant's consignment book, wherein were listed the articles which defendant acknowledged he had received from plaintiff's wife. Therefore, in view of the inconsistencies obviously manifested by virtue of these "itemized lists", we said "plaintiff's right to sue for the return or the value of the unsold articles retained in the possession of the defendant is reserved". The judgment in Steckler v. Spicuzza, supra, with reference to the Japanese dresser was based on the undisputed fact that the defendant auctioneer was deliberately and unjustifiedly withholding from plaintiff, a specific and completely described article.
It was our confirmed opinion in our original decree, and is now, that there exists much doubt as to which specific articles belonging to plaintiff are in the possession of defendant. We are of the opinion that the following testimony of plaintiff's wife is illustrative of this "doubt":
"Q. Did you get a receipt for all of the things you delivered to Mr. Fabacher for sale? A. No, and that is what I kept asking for every time I went there. When Mr. Barnes came up to theattic I said 'I haven't a complete or accurate list of thesethings, give me a list of the contents,' and he said 'Don't worry, Mrs. Deutsch, as soon as I get these things on the sidewalk I'll make a copy and send it to you.'
* * * * * *
"Q. Did you ever speak to Mr. Barnes again? A. Yes, I spoke to the other gentleman whose name I did not know but whose voice I recognized as being the one I had spoken to before. That other gentleman said to me that the girl had quit, and I said 'She promised she would give me a list of the things Ileft here and what has been sold.' He said 'She has quit on me, but I'll send you that list in a day or two.'
"Q. Did you get it? A. No.
* * * * * *
"Q. Did you ever hear from him further? A. He promised to send me a list but I didn't get it.
* * * * * *
"Q. Have you ever received any receipt or accounting from Mr. Fabacher or anyone representing him? A. Never.
"Q. Have you a list of the articles which you delivered to Mr. Fabacher and their value? A. Yes.
"Q. Where did you get that list? A. Well, I made it up; I was thinking of what I had given him and you told me you had written Mr. Fabacher and had to have a list. In a sort ofgeneral way I said 'Well, I guess all that stuff is worth aboutthree hundred dollars.'
"Q. Did you ever make up an accurate list of those items? A. Yes, I did, you told me you felt that you had to sue them and you decided and I decided that this had to be a carefully made up list.
"Q. I now show you what purports to be such a list, giving those articles and their values, and ask you who wrote that? A. I wrote it.
"Q. Is that a correct list of those articles? A. Yes, I thinkthere are lots of them that I forgot."
On cross-examination this testimony was elicited from plaintiff's wife:
"Q. Well, this safe box we are talking about now, what kind of safe box was it? A. I really don't remember it.
"Q. You don't remember it? A. No.
"Q. Well, if you don't remember it how did you get the information to put on this slip? A. Well, I got that information because — I tell you how I did that. I went up inthe attic with my *Page 374 chauffeur and said, 'George what is missing'?
* * * * * *
"Q. So you don't know anything more about the safe box than your chauffeur told you a safe box was missing? A. That's right. * * *"
The record is replete with testimony of this nature.
A careful reconsideration and thorough analysis of this matter convinces us that our former opinion and decree are correct and that they should be reinstated.
For the reasons assigned our original opinion and decree herein are reinstated as the final judgment of this court.
Original decree reinstated.